McWHORTER and others, Plaintiffs and Respondents, v. EMPLOYERS MUTUAL CASUALTY COMPANY and another, Defendants and Appellants: LUEBKE, Defendant.

*September 8—October 5, 1965.*

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

For the respondents there was a brief by *Blakely, Long, Grutzner & Jaeckle* of Beloit, and oral argument by *J. Richard Long.*

HALLOWS, J.   The rules governing summary judgments are well known and have been frequently stated and explained by this court.  Under the rule of *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 105 N. W. (2d) 305, and *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41, we first examined the moving papers and documents to determine whether the

moving party has made a *prima facie* case for summary judgment under sec. 270.635 (2), Stats., and if he has, we then examine the opposing party's affidavits and other proof to determine whether facts are shown which the court deems sufficient to entitle the opposing party to a trial. If the material facts are not in dispute and if the inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion, then only a matter of law is presented which should be decided upon the motion. *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9; *Rabinovitz v. Travelers Ins. Co.* (1960), 11 Wis. (2d) 545, 105 N. W. (2d) 807; *Bond v. Harrel* (1961), 13 Wis. (2d) 369, 108 N. W. (2d) 552.

The material evidentiary facts in this case are not in dispute but it is contended by the appealing defendants that different inferences can reasonably be drawn therefrom in respect to the essential ultimate fact of the ownership of the car and thus a trial is required. We think not.

On Friday, July 6, 1962, Shirley Luebke went to the used-car lot of Yunker in Oconomowoc and entered into a transaction involving a 1953 Oldsmobile with Ronald Rentmeester, a salesman for Yunker. She signed what is entitled a car-purchase order which called for the placing of an order for the Oldsmobile and which "requires the acceptance of the seller or its authorized agent." A place for acceptance was provided for the "Dealer's or officer's signature," which was left unsigned. Although the salesman was also required to sign this order, the order stated his signature was "For information only." The document also provided it contained all the agreements of the parties. The price of the auto was $250 and was to be financed by some finance company through a conditional-sales contract. The $50 deposit and $7.50 sales tax were paid by Luebke and the balance was to be paid in six instalments of $35.91. The document was

never signed by Yunker but a copy was given to Luebke. She was also given the keys to the car by the salesman and the dealer-license plates for use on the car, but the used-car sticker on the Oldsmobile was not removed.

According to plaintiffs' affidavit, which incorporates part of an adverse examination of Luebke, she was to return the car to Yunker on July 10th for a checkup and to complete the signing of papers. Luebke had previously owned a car which was junked at Brodhead, and she intended to drive to Brodhead to see if she could salvage the license plates and get insurance. On Monday, July 9th, the day the accident occurred, Yunker prepared the following documents concerning the transaction: (1) A conditional-sales contract dated July 9th; (2) a motor vehicle dealer's statement of tax payment showing the sale as July 9th; (3) a car invoice dated July 9th showing details such as the financing cost, the total-time price, the name of the financing company and other details which were not on the order signed by Luebke on July 6th, and (4) a draft drawn by Yunker on the finance company. The certificate of title to the Oldsmobile was never assigned by Yunker or filled out. None of the above documents, even though some of them required Luebke's signature, was signed by her or delivered to her. In an affidavit on behalf of defendants it is stated that when knowledge of the accident was received, counsel advised Yunker to cease processing the transaction. After the accident, Yunker sued Luebke for the balance of the purchase price of the car, alleging an offer to purchase which was accepted. A tender of $285.95 was made by Luebke's attorney in the case on the theory she had damaged property of Yunker which she held under bailment and not a sale, and the case was dismissed on stipulation without any finding on the merits. The affidavits of the defendants set forth parts of an adverse

examination of Luebke to the effect she purchased the car on July 6th and was going to drive to Brodhead to get the license plates off her junked car and insurance for the car. There is an affidavit by the salesman in which he stated he placed no restrictions upon Luebke in driving the automobile and did not tell her she was to bring it back to Yunker.

It appears all the facts relating to the transaction were brought out in the affidavits, documents, and adverse examinations; there was no claim by the appellants to the contrary. This is a simple case of a transaction between two people evidenced by a document which provided the entire transaction had to be in writing and "all the terms of the agreement are printed or written herein." We think the trial court was correct in deciding a contract was not entered into because the offer to purchase had not been accepted by Yunker according to the terms of the offer to purchase. This view is compelled also by the action of Yunker in preparing the documents on July 9th, which would normally constitute the sale of the car.

It has been held a car-purchase order signed by the customer but not accepted by the dealer in writing as required was not a sale of the automobile. *Midland Loan Finance Co. v. Madsen* (1944), 217 Minn. 267, 14 N. W. (2d) 475. The defendants contend *Albright v. Stegeman Motor Car Co.* (1919), 168 Wis. 557, 170 N. W. 951, is controlling in that the dealer can accept such an order by his action. It is argued the order of purchase was accepted by the down payment and the giving of the possession of the car to Luebke, which evidenced an intention not only to accept the order but to pass title. The down payment cannot be an acceptance of the order since it was a part of the offer and the giving of possession of the car by the salesman was contrary to the method proposed in the offer for its acceptance. Since the salesman could not bind Yunker by its "For

information only" signature on the order, his giving possession of the car could hardly constitute acceptance which would bind Yunker to a contract. In *Albright* the order for a truck to be manufactured by the offeree, which required by its terms a written acceptance, was held to be accepted by the action of the offeree in manufacturing the truck, but there the acts held to be an acceptance were by one in authority and the party itself. Nor will we assume the salesman, when he gave Luebke the dealer's license plates for use, intended to pass title to the car and to violate sec. 341.55, Stats., and subject himself or Yunker to a possible penalty of $200 or six months in jail, or both, for allowing the wrongful use of license plates. We considered the use of dealer's license plates one of the significant elements in not passing title to an automobile in somewhat similar circumstances in *Klapps v. American Ins. Co.* (1965), 26 Wis. (2d) 664, 133 N. W. (2d) 248. We believe no reasonable inference that a sale was consummated and title passed can be drawn from letting Luebke use the Oldsmobile under the circumstances and with the used-car sticker and the dealer's license plates on the car.

Assuming arguendo the offer was accepted, we would still be faced with an agreement to sell and not an agreement of sale. This was not a sale on open account but one to be financed by a conditional-sales contract by which the seller retains title to the car for security purposes. Generally, title to personal property sold passes according to the parties' intention. Sec. 121.18, Stats. In view of the method of financing, only one conclusion can be drawn, namely, the title was not to pass until the conditional-sales contract was signed and other documents of title delivered. Such a sale would be governed by sec. 218.01, referred to in the order to purchase.

It is true, the affidavit on behalf of the defendants states it was the intention of the salesman to transfer ownership at the time he gave Luebke the car. This is but a conclusion

in the affidavit of counsel for the defendant and would not be admissible as evidence at the trial. The statements of Luebke that she "purchased" the car and she was pleased with the "purchase" are conclusions or opinions on her part of the ultimate fact and not evidentiary facts. These statements must be disregarded. We place little weight on the lawsuit in Waukesha county to recover the balance of the purchase price of the car. The case was settled and dismissed without an adjudication of its merits.

On the record before us, the appellants do not by their affidavits convince us any more than they did the trial court that there ought to be a trial on the facts. We agree the only reasonable inference which can be drawn is that title to the Oldsmobile was still in Yunker at the time of the accident and consequently its insurance policy covers Shirley Luebke.

*By the Court.*—Judgment affirmed.