In re voluntary assignment of MUELLER TRAVEL AGENCY, INC., Assignor, to Ivan Knutsen, Assignee: JOHNSON and another, Appellants, v. KNUTSEN, Assignee, Respondent.

*No. 208. Argued October 4, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 589.)

208

For the appellants there were briefs and oral argument by *Richard R. Rynders* of Madison.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* and oral argument by *Robert D. Heidel,* all of Madison.

HALLOWS, C. J. The main question on this appeal is whether Mueller Travel Agency, Inc., held the gar-

nisheed funds in trust. Mueller Travel Agency was purchased from Norman L. Larson and Howard R. Meyer by Frank T. Fetherston on June 11, 1965, and the agency was incorporated by Mr. Fetherston. He, with the appellants Cephas Johnson and Van Dyke Parker, became officers and directors of Mueller Travel Agency, Inc. (Mueller). Among the rights transferred to Mueller was a contract to sell tickets for Air Traffic Conference of America (ATC) member· carriers. ATC was an agency, representing various airplane companies, and had negotiated the contract between Mueller Travel Agency and each individual member carrier. This contract provided:

(1) That all ticket forms supplied by the carrier to the agent were to be held "in trust" by the agent.

(2) That the agent was to report three times per month on tickets sold on the carrier and to submit a check for the amount of business written on that carrier during the previous ten-days' sales period (in the words of the contract, "All moneys . . . collected by the Agent for air passenger transportation . . . shall be the property of the Carrier, and shall be held in trust by the Agent until satisfactorily accounted for to the Carrier.").

(3) That all agents were to maintain special deposit accounts for the proceeds of ticket sales.

However, some two and one-half years before the sale of Mueller Travel Agency, the requirement of maintaining special deposit accounts was eliminated and replaced with a requirement that the travel agent obtain a surety bond. Upon the purchase of the agency, Mueller sought to have the surety bond in the amount of $50,000 transferred to it, but the insurer Insurance Company of North America (ICNA) would agree only if the officers and directors of Mueller agreed personally to indemnify, should payment under the bond be required. Both Johnson and Parker agreed to this.

From June, 1965, until February 10, 1967, Mueller deposited the proceeds of its ticket sales for ATC member carriers, together with income from ticket sales for other carriers, into a general commercial checking account in the First National Bank of Madison. Much of the business of Mueller was conducted on credit and in order to meet its contract requirements of making remittances every ten days to the ATC member carriers, Mueller established a $50,000 line of credit at the First National Bank of Madison. However, Mueller began having financial difficulties and on February 10, 1967, the First National terminated the credit arrangement. Two days later, Mueller opened a general checking account in the Commercial State Bank of Madison and when it was garnisheed by Larson and Meyer on February 21, 1967 (nine days later), there was $18,794.72 in the account. Mueller then opened a general checking account in the First National Bank of Columbus and Larson and Meyer on July 10, 1967, garnisheed this account which contained $12,775.69.

When Mueller ran into financial difficulties, it failed to pay the ATC member carriers for sales made between January 21 and February 15, 1967, as required under its contract. Consequently, these members called upon ICNA for payment under the bond. Although at that time the ATC members had $89,256 owing them, only $73,479 was subject to the bond; and since the bond was for $50,000, a pro rata payment was made of $47,500. Later, Johnson and Parker, as required by their agreement to indemnify ICNA, paid this amount and on the basis of subrogation evidenced by an assignment took judgment against Mueller for $48,408.11.

Mueller continued to do business until December 1, 1969, when it made an assignment for the benefit of creditors and the respondent Ivan Knutsen was appointed receiver. Among the assets listed in the assignment was

the $31,524.41, the amount of the garnisheed funds, which was held by the clerk of the circuit court as a result of our decision in *Larson v. Fetherston, supra.* With other creditors, Johnson and Parker filed general claims in the proceeding and also petitioned the court for a "reclamation," arguing Mueller had held the funds under its contract with the ATC member carriers as trust funds and they were subrogated to the rights of the member carriers to these funds. The trial court held the relationship between Mueller and each ATC member carrier was not that of trustee and beneficiary but that of principal and agent in which a debtor-creditor relationship existed; that Johnson and Parker in any event had failed to trace and identify the proceeds of the ticket sales of each carrier in the garnisheed accounts and consequently they had no preferential rights to the funds, nor were they the owners of the funds.

We think the trial court was correct in its holding that the title to the proceeds in the accounts did not rest in the ATC member carriers as the beneficiaries of a trust. It is quite true the agreement provided that all moneys collected by Mueller for air-passenger transportation was the property of the carrier and should be held in trust until satisfactorily accounted for to the carrier. But, the original requirement in the contract that the agent was to maintain special deposit accounts for the proceeds of the ticket sales was replaced by a bond and the proceeds of sales of tickets were thereafter commingled with other proceeds in a general commercial checking account. It has long been established the mere use of the term "in trust" or other words referring to a trust relationship in a contract is not determinative of the existence of a trust. *See: Kuether v. State* (1921), 174 Wis. 538, 183 N. W. 695; *Otjen v. Frohbach* (1912), 148 Wis. 301, 134 N. W. 832; *Danforth v. Oshkosh* (1903), 119 Wis. 262, 97 N. W. 258; *Davies*

*v. Davies* (1901), 109 Wis. 129, 85 N. W. 201. The question of whether the initiator of a transaction intended a trust or an agency depends "not so much on the language used, as on the characteristics and purposes of the relationship." Bogert, *Trusts and Trustees* (2d ed. 1965), pp. 75, 76, sec. 15. It is not so much what is said as what is done in pursuance to what is said that determines a trust relationship.

In this case, none of the usual characteristics of a trust relationship are present. A trustee is not subject to the control of a beneficiary, but here Mueller was required to report every ten days and make payment for sales even though the airplane tickets were sold on credit and the proceeds had not been received by Mueller. A trustee cannot normally bind the beneficiaries, but here the ATC member carriers were bound by the ticket sales made by Mueller which issued the tickets for cash or credit. Title to trust property is in the trustee, not the beneficiary, but here the contract provides the title to the proceeds was in the carriers (the beneficiaries).

The provisions of the contract are not controlling when inconsistent with the actions of the parties. Here, a relationship of creditor and debtor existed within a principal-agent relationship. There is nothing unusual in having a debtor-creditor relationship within an agency relationship. The acts here point to an agency for the purpose of binding the member carriers to honor the tickets sold and to a debtor-creditor relationship for the purpose of payment to the carriers for the tickets sold. It is not a necessary element of the principal-agent relationship that title to the proceeds of the sale of the principal's property be held by the agent for the principal. And, in cases where a principal allows an agent to commingle the principal's property with his own, the principal becomes a creditor of his agent. *O'Neil v. Russell* (1929), 198 Wis. 9, 223 N. W. 82; *see also Wells v. Collins* (1889), 74 Wis. 341, 43 N. W. 160; *Cotton v. Sharpstein*

(1861), 14 Wis. 245 (*226). We think it is clear the original trust provisions of the contract were modified, not only by the bond provisions, but also by implied consent through the actions of the parties. The testimony of Fetherston and other witnesses that the proceeds were the property of ATC member carriers and not Mueller is not controlling. This testimony constitutes their opinion as to an ultimate fact in issue which is not binding upon a court. *See Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911; *McWhorter v. Employers Mut. Casualty Co.* (1965), 28 Wis. 2d 275, 137 N. W. 2d 49.

This view makes it unnecessary to discuss in any detail the argument Johnson and Parker had sufficiently traced the funds as belonging to the carriers, to whose rights they were subrogated. The burden of tracing the funds in order to recover them on a trust theory rests on him, who claims the existence of the trust. Thus the burden is on Johnson and Parker. *Burnham v. Barth* (1895), 89 Wis. 362, 62 N. W. 96; *Henika v. Heinemann* (1895), 90 Wis. 478, 63 N. W. 1047; and *Gianella v. Momsen* (1895), 90 Wis. 476, 63 N. W. 1018. The sales of tickets for which Mueller failed to remit were those sold between January 21 and February 15, 1967. Subsequent to February 15, 1967, Mueller did not sell any ATC member carrier tickets although it stayed in business until the assignment in December of 1969. Consequently, part of the funds could not have been received from any tickets sold for ATC. Furthermore, the record shows the funds in the garnisheed accounts were proceeds from the sales of airline tickets, steamship tickets, and other income, some of which was for tickets sold for carriers which did not belong to ATC. There was a failure to adequately trace the specific funds from sales of tickets of the ATC member carriers and the trial court was correct in so holding.

Prior to the hearing, Johnson filed an affidavit of prejudice against the trial judge. A motion for a change of venue was denied on the ground Parker was not properly joined and therefore the application was defective. The affidavit stated, "That affiant is jointly interested with Van Dyke Parker, who is presently outside the continental United States, but who desires a change of venue." The trial court correctly held this affidavit was not sufficient to comply with the statute.

It has long been held an application for change of venue is defective if it is not joined in by all the parties on the same side. *See Will of Rice* (1912), 150 Wis. 401, 405, 136 N. W. 956, 137 N. W. 778; *Morris v. P. & D. General Contractors, Inc.* (1941), 236 Wis. 513, 295 N. W. 720. This requirement applies to all applications whether they seek a different judge or a change of venue. *Dutcher v. Phoenix Ins. Co.* (1968), 37 Wis. 2d 591, 155 N. W. 2d 609. While such an application must be made by all the parties on the same side, it may be based on the affidavit of one party alone. *See: Wolcott v. Wolcott* (1873), 32 Wis. 63; *Rupp v. Swineford* (1876), 40 Wis. 28; *State ex rel. Cuppel v. Milwaukee Chamber of Commerce* (1879), 47 Wis. 670, 3 N. W. 760. Here, the application was made by Johnson alone and his statement that Parker also wanted a change is insufficient.

*By the Court.*—Order affirmed.