In the Matter of COLONIAL CHE-SHIRE I LIMITED PART-NERSHIP, Debtor.

In Matter of COLONIAL CHESHIRE II LIMITED PARTNERSHIP, Debtor.

RESOLUTION TRUST CORPORATION, Receiver for Nassau Federal Savings and Loan Association, Movant,

v.

COLONIAL CHESHIRE I, LTD.PS., Debtor.

RESOLUTION TRUST CORPORATION, Receiver for Nassau Federal Savings and Loan Association, Movant,

v.

COLONIAL CHESHIRE II, LTD.PS., Debtor.

Bankruptcy Nos. 2–91–01223, 2–91–01234.

United States Bankruptcy Court, D. Connecticut.

Aug. 1, 1991.

---

Anthony F. Walsh, Brent A. Friedman, and Michael Lastowski, Saul, Ewing, Remic & Saul, New York City, for A.I. Credit Co.

William Murphy and William S. Fish, Jr., Tyler, Cooper & Alcorn, Hartford, Conn., for movant.

MEMORANDUM OF DECISION AND ORDER RE: A.I. CREDIT CORPORATION'S MOTION TO DISQUALIFY TYLER, COOPER & ALCORN AS ATTORNEYS FOR THE RESOLUTION TRUST CORPORATION IN ITS CAPACITY AS RECEIVER FOR NASSAU FEDERAL SAVINGS & LOAN ASSOCIATION

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

A.I. Credit Corporation (AICCO) seeks an order of the court disqualifying Tyler, Cooper & Alcorn (TCA) from acting as local counsel for Resolution Trust Corporation (RTC), the movant in relief from stay proceedings in these two chapter 11 cases. The thrust of AICCO's motion is that TCA and AICCO have an attorney-client rela-

tionship, and that TCA's representation of RTC violates Rule 1.7 of Connecticut Rules of Professional Conduct. That rule, in general, prohibits attorneys from representing one client in matters adverse to another client. TCA denies that an attorney-client relationship ever existed between the law firm and AICCO.

## II.

Colonial Cheshire I Limited Partnership and Colonial Cheshire II Limited Partnership, the debtors in these two cases, are Connecticut real estate limited partnerships whose properties are subject to mortgages held by RTC as receiver for Nassau Federal Savings and Loan Association. RTC's lead counsel in the relief from stay proceeding is Greenbaum, Rowe, Smith, Ravin, Lavis & Bernstein (Greenbaum, Rowe) of Woodbridge, New Jersey. TCA is local counsel for RTC. RTC has moved for relief from stay to proceed with foreclosures of its mortgages, and AICCO, a major creditor of the debtors, opposes RTC's motion.

AICCO's asserted client relationship with TCA arises from their involvement with a third Connecticut real estate partnership known as Colonial Metro Limited Partnership (Metro).[1] On April 30, 1987, Metro borrowed $21,660,000 from Citytrust. As collateral for the loan Metro assigned notes it held from the limited partners-investors. Citytrust then sold undivided participation units in the loan to AICCO for $5,660,000; to Bank of New York (BNY) for $8,000,000 and to Daiwa Bank, Ltd. for $8,000,000. Colonial Realty Company, Colonial Realty II, Jonathan Googel, Benjamin J. Sisti and Frank M. Shuch guaranteed payment of the loan. Citytrust served as servicing agent for the loan until November 30, 1990 when it assigned the Metro promissory note and the collateral to BNY. BNY and AICCO thereupon entered into a Loan Participation Agreement (the agreement) which provided that "BNY may ... take such actions as may be reasonably neces-

1. Colonial Realty Company, a debtor in this court, was involved in the creation of some 80 real estate limited partnerships throughout the United States. The present or former general

partners of Colonial Realty Company—Benjamin J. Sisti, Jonathan Googel and Frank M. Shuch—are also debtors in this court.

sary or appropriate to collect the amounts due under the Note, including, without limitation, such action as may be necessary to enforce, collect or realize upon the Guaranty and the Investor Notes." (Para. 5.1(a)); that "[i]n acting as servicing agent, BNY may employ agents (which may be affiliates or support divisions of BNY) and attorneys-in-fact ..." (Para. 6); that the loan participant will be proportionately liable for any attorney's fees (Para. 5.2); and that security for the loan and monies collected shall be held in "trust" by BNY (Para. 1). The agreement stated that it "shall be governed by and construed and enforced in accordance with the laws of the State of New York." (Para. 17).

On February 26, 1991, by letter, BNY advised AICCO and other participating banks that it "would like to engage" TCA as local bankruptcy counsel in several Colonial Realty Company-related bankruptcy cases, including that of Metro. The letter added the following:

> The Tyler firm has looked into possible conflicts in representing us and has informed me that it currently has some minor representations in these cases, all of which are unsecured creditors to the bankruptcy debtors.

> If you have any questions concerning this representation, please contact me. In any event, I need to hear from you as soon as possible concerning your approval of the expenditures involved in having this firm represent us.

On February 22, 1991, TCA had specifically advised BNY of its involvement with the debtors.

On or about March 7, 1991, BNY retained TCA who thereafter initiated approximately 300 collection actions on the Metro investor notes and entered appearances on behalf of BNY, as a defendant, in two class actions brought in the United States District Court for the District of Connecticut and in the Superior Court for the State of Connecticut in which the same note payors sought to rescind the investor

notes. AICCO is also a defendant in these class actions and has retained counsel to represent it.

RTC, on January 18, 1991, had retained TCA as local counsel in connection with RTC's claims against the debtors and the guarantors. The debtors filed their chapter 11 bankruptcy cases on or about April 17, 1991. TCA, as local counsel for RTC, filed the relief from stay motions in the debtors' cases on or about May 2, 1991. After AICCO became aware of TCA's representation of RTC in these cases, AICCO, on June 4, 1991, filed the instant motions to disqualify TCA as attorneys for RTC "pursuant to Local District Court Rule 3 and Rule 1.7 of the Rules of Professional Conduct." [2]

### III.

The United States District Court for the State of Connecticut, in L.R.Civ.P. 3(a), adopted the "Rules of Professional Conduct" as approved by the Judges of the Connecticut Superior Court as in effect on October 1, 1986. Rule 1.7(a) provides:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless: (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) Each client consents after consultation.

The controlling issue in this proceeding is whether an attorney-client relationship existed between TCA and AICCO by virtue of the agreement between BNY and AICCO. All other contact between AICCO and TCA is found to be minimal and inconsequential. AICCO argues that BNY is an agent of the loan participant, that a trustee/beneficiary arrangement exists, and that AICCO is thereby a client of TCA since its representation of BNY is for the benefit of AICCO.

TCA denies that any fiduciary relationship arises from the agreement and relies upon *In re Colocotronis Tanker Securities Litigation*, 449 F.Supp. 828, 832–833

---

**2.** AICCO also moved to so disqualify Greenbaum, Rowe, which motion the court, after hearing, denied.

(S.D.N.Y.1978) for the proposition that a loan participation, by itself, neither gives rise to a special fiduciary or trust relationship, nor to an attorney-client relationship between the participants and counsel for the servicing bank.

In *Colocotronis*, the plaintiffs, as participating banks, brought an action against European–American Banking Corp. (EABC), the servicing bank. The plaintiffs sought by way of discovery certain correspondence between EABC and the attorneys it retained for the loan participation and subsequent workout. EABC objected to the discovery on the grounds that the documents were privileged under the attorney-client privilege. The plaintiffs claimed that they were clients of the same attorneys and as such the privilege did not apply. The *Colocotronis* court, noting that there was no indication of any confidential communications between the plaintiffs and the law firms and that no legal advice had been sought, concluded "that the banks were not actual clients of the firms. Rather, the sole actual client was EABC, the entity which sought out the firms, which communicated with them in confidence and which looked to them for advice which would protect the interests of EABC." *Id.* at 832. The court determined that parties to a loan participation agreement are not in a fiduciary relationship, but are parties in an arms-length commercial transaction and that "[i]n the absence of any comparable evidence which would demonstrate the existence of . . . a relationship of trust, confidence and mutual reliance between the banks and the [law] firms, the few facts which the banks have put forward are insufficient to establish them as actual clients of these firms." *Id.* *Accord, Northern Trust Co. v. FDIC,* 619 F.Supp. 1340, 1344 (D.C.Okla.1985) (banks in loan participation agreements are involved in commercial arms-length transactions and do not stand in fiduciary relation to each other).

AICCO argues that it should be regarded as a client of TCA because it is proportionally liable for the attorney's fees involved from the representation of BNY. They cite no authority for this proposition, and the cases are to the contrary. *See, e.g., Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 108 (2d Cir.1991) ("The test of the attorney-client privilege is not who pays the bills, but to whom allegiance is owed.") (quoting *Petrowski v. Norwich Free Academy,* 2 Conn.App. 551, 563, 481 A.2d 1096 (1984), *rev'd on other grounds,* 199 Conn. 231, 506 A.2d 139 (1986)). A like situation which existed in *Colocotronis* did not affect the determination that the participatory banks were not clients of the servicing banks' counsel. 449 F.Supp. at 832.

The agreement concededly states that all collateral for the loan "shall be held in trust by BNY for the pro rata benefit of the Participant" (Para. 9), and that the participant's percentage share of any amounts collected on behalf of the loan "shall be held in trust by BNY" until remittance (Para. 1). Notwithstanding these express terms, the agreement, taken as a whole, is not one imposing fiduciary duties. It states that "BNY in performing its obligations hereunder, will exercise the same care that it exercises in the making and handling of loans and security for its own account, but BNY does not assume any further responsibility and shall be liable to the Participant only for its gross negligence or willful misconduct." (Para. 2). Nothing in the agreement prohibits BNY from using the trust funds for its own benefit as long as it pays interest, and there are no provisions for the monies collected to be held in a separate account. "It has long been established that the mere use of the term 'in trust' or other words referring to a trust relationship in a contract is not determinative of the existence of a trust." *In re Mueller Travel Agency, Inc.,* 56 Wis.2d 207, 211–212, 201 N.W.2d 589, 592 (1972). *See also, Hoffman v. Wausal Concrete Co.,* 58 Wis.2d 472, 207 N.W.2d 80, 84 (1973).

I conclude that AICCO's arguments, taken together, do not form the basis for establishing an attorney-client relationship between it and TCA. The two principal cases relied on by AICCO are inapposite— *Helt v. Metropolitan District Comm.,* 113

F.R.D. 7 (D.Conn.1986) and *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494 (D.Conn.1985). Both dealt with employee pension plans where true trust relationships between the plan fiduciary and the beneficiaries were found to exist. Accordingly, attorneys for the fiduciary were held to be attorneys for the beneficiaries.

### IV.

The motion to disqualify TCA is denied because AICCO is not a client of TCA for the purposes of Rule 1.7 of the Connecticut Rules of Professional Responsibility. It is

SO ORDERED.