OLIVER FARM EQUIPMENT SALES COMPANY *v.* WALTERS, ET AL.

[No. 16,481. Filed October 23, 1941.]

*Charles H. Bedwell,* of Sullivan, *Arnold, Chipman & Degnan,* of South Bend, for appellant.

*Jesse E. Bedwell, Charles D. Hunt* and *W. F. Wood,* all of Sullivan, for appellees.

CURTIS, J.—A fair statement of the facts herein are that:

The appellant is engaged in the farm implement business, with its principal office at Chicago, Illinois, with one of its branches located at South Bend, Indiana, and a sub-branch at Indianapolis, Indiana, under the control of the South Bend branch. It conducts its business through managers, assistant managers, salesmen, and local dealers. Appellee Bledsoe had been a local dealer of the appellant for one year prior to October 31, 1936, but upon that date his status as local dealer had ceased; and thereafter he was a sort of "free

lance," soliciting orders and earning a commission through the Indianapolis sub-branch by paying cash for such implements as he secured for his customers.

While conducting his business in this manner, on March 15, 1937, Bledsoe and appellee Walters each signed a document which, eliminating surplusage, was as follows:

"Oliver Farm Equipment Sales Co.
Chicago, Ill.

Dated March 15-37

"Please enter my order for the following machinery to be shipped to me, to or in care of O. T. Bledsoe at Sullivan Railway Station by the route you consider best, on or about the 15th day of April, 1937, with the fixtures and extras as you usually build and furnish:

"1 R. C. 70 Tractor with Oliver-Hart-Pair Tractor with lugs, bolt and pully.

. . .

"I agree to pay freight from the factory for the goods ordered, and, on delivery or tender thereof, settle therefor as follows: $400.00 cash with order, $200.00 note due April 1, 1938, $200.00 note due April 1, 1939; $390.00 note due April 1, 1940.

"The above described notes will draw interest at 6% per annum payable annually from date of delivery of machinery until maturity and 6% after maturity and may be sent to Sullivan State Bank at Sullivan, Ind., for collection.

"I further agree to give, as security for the above described notes, a first mortgage on the above named machinery.

"If this tractor can't be delivered, I, O. T. Bledsoe, will pay Lege Walters, Three Hundred Dollars for horse, and the sale of, the tractor will be canceled.

"I agree that any breach of warranty or any delay in delivery or other omission on the part of the seller shall not confer any right of damage for delay or loss of work or earnings or for other damages. In no event shall the seller be liable otherwise than for the return of cash and notes actually received for the machinery herein described.

"I agree that this order is subject to acceptance by the assistant sales manager of Oliver Equipment Sales Company, notice of which acceptance is hereby waived, and this contract shall be of no effect whatsoever until such acceptance in writing is given.

"Sullivan, R. E. RFD No. —.

Lege Walters,
Purchaser.

"Order taken by (Signature) O. T. Bledsoe,
Salesman.

"ACCEPTED AT CHICAGO, ILLINOIS, This _____ day of _____, 193____.

(Printed) OLIVER FARM EQUIPMENT SALES COMPANY,

"By O. T. BLEDSOE, (Signature)
Assistant Sales Manager."

Some time after this transaction—about three or four days later—Bledsoe delivered a copy of the order to one Huntsburger, who was "territory man" for appellant company. Huntsburger was a salesman for the appellant company, but possessed no authority to approve or accept, on behalf of appellant, any orders for machinery. The order never reached the appellant company, for action—at least no evidence was produced that it did and no action was ever taken thereon by the appellant.

Between March 18, and March 22, 1937, Walters delivered the horse described in the "order" to Bledsoe. Bledsoe immediately sold and delivered the horse to one Anderson, receiving $225.00 cash from Anderson for it. No part of this money was ever paid over or received by the appellant according to the evidence of its records. There was evidence that Bledsoe said he had turned the money received from the sale of the stallion over to the appellant. No information of the transaction was ever brought to the knowledge of appellant until shortly before the suit was filed.

About a month subsequent to the transaction of March 15, 1937, Bledsoe approached Walters on re-arranging the financing of the tractor in question. Bledsoe suggested that he could probably handle the entire purchase price through the local bank at Sullivan. Walters assented to this departure from the order, pro-vided "it did not cost me any more and didn't bind me any tighter than the contract would." Upon going to the bank, both learned that the banker was asking for additional security—a mortgage on Walters' farm. Walters would not assent to such condition. They walked out of the bank together. Walters said: "I reckon the trade is off." Bledsoe, according to Walters, replied: "I reckon it is. We would have to have more money to make the trade than the $400.00." The latter amount evidently referring to the $400 cash payment called for by the order, for which amount, according to the order and agreement of Bledsoe, Walters was to have credit on account of the delivery of the stallion.

Bledsoe did not pay the $300.00 to Walters, called for by the order in event the tractor was not delivered; nor did he ever return the stallion to Walters. Re-peated demands by Walters made on Bledsoe for the money were put off by Bledsoe with the statement that, "The Oliver people had the money and as quick as he (Bledsoe) could get it he would pay me (Walters); that they was a little slow about coming up."

A year later this suit was filed by Walters against Bledsoe and the appellant. The complaint was in three paragraphs. The first alleging that the plaintiff pur-chased of the defendants a tractor for $1,190.00 on the 15th day of March, 1937, to be delivered about April 15, 1937; and plaintiff at the time paid the defendants $400.00 on account thereof; that the defendants have failed and refused to make delivery of the tractor and

failed and refused to return the $400.00, for the return of which the action is brought. The second paragraph of complaint consisted of a simple count for money had and received in the amount of $400.00, by the defendants for the use of the plaintiff, to apply on the purchase price of the tractor; that the tractor was not delivered and the money not repaid to plaintiff.

The third paragraph of complaint avers that the plaintiff ordered of the defendants a tractor under a written order (the one given in substance above and made an exhibit to the complaint) and contemporaneously delivered to the defendants a stallion of the reasonable value of $400.00, which, by agreement between plaintiff and defendants, was to be a credit to the amount of $400.00 thereon; that the "defendants then and there accepted said property and stallion as cash payment of four hundred dollars on said machinery, purchased as aforesaid." That the defendants failed and refused to make delivery of the tractor, and have failed and refused to return the stallion, but, on the contrary, have retained him, to plaintiff's damage of $400.00. Prayer in each paragraph for $400.00.

Bledsoe answered the complaint by a general denial. The appellant demurred to the third paragraph of complaint for want of sufficient facts, with memoranda that it appeared from the face of the exhibit (the order) that the parties (Walters and Bledsoe) had specifically agreed that if the tractor was not delivered, Bledsoe should pay Walters $300.00, and as the appellant had never accepted the order or acted on it,·the remedy provided by the instrument itself was exclusive, i. e., Bledsoe became indebted to Walters for $300.00, and the appellant could not be charged with liability.

The demurrer was overruled; and the appellant, excepting, filed an answer in general denial to each of

the three paragraphs of complaint and a verified special answer addressed particularly to the third paragraph of complaint, alleging that Bledsoe did not have any authority whatsoever to accept Walters' order or otherwise to contract on behalf of the appellant company; nor any power or authority to make or execute or in any manner to bind the appellant company to the order, made an exhibit; and said exhibit (the order in question) was executed without authority and without the knowledge of appellant and was not its act or deed.

Trial was had by a jury, resulting in a verdict against the appellant and in favor of Walters for $300.00, and in favor of Bledsoe, that as to him Walters take nothing. Appellant filed a motion for a new trial, asserting that the verdict was not sustained by sufficient evidence and was contrary to law, error as to certain instructions to the jury, and that there was error in admitting into evidence as against the appellant the said order. The motion was overruled, exception by the appellant; judgment on the verdict, and this appeal.

There is an entire lack of evidence to sustain any conclusion that, at the time of the so-called "order" or contract between Bledsoe and the appellee, the said Bledsoe was the agent of the appellant or that he had any actual power to bind said appellant.

But the appellee says that he relied upon a "holding out" by the appellant of Bledsoe as its agent; and although Bledsoe may not have been the actual agent of the appellant at the time, yet the appellant is bound by the acts of Bledsoe as its ostensible or apparent agent by reason of such "holding out." Both sides agree that the law recognizes such an agency if the facts warrant it. We, therefore, do not deem it necessary to cite authorities on the question as to whether

or not in a given case there may be an apparent or ostensible agency. The real question before us is, do the facts in the instant case warrant a conclusion that such apparent or ostensible agency existed and could properly be relied upon by the appellee at the time of the so-called "order"?

We think that the so-called "order" or contract between Bledsoe and the appellee completely negatives and nullifies the idea that the appellee thought he was dealing with one (Bledsoe) who had authority to bind the appellant, for it contained the specific provision that, "I agree that this order is subject to acceptance by the Assistant Sales Manager of Oliver Equipment Sales Company, notice of which acceptance is hereby waived, and this contract shall be of no effect whatever until such acceptance in writing is given." There is no evidence whatever of any such acceptance. The appellee, by his own evidence, is thus shown to have contracted in writing that the so-called "order" was of no effect until accepted by the appellant by its assistant sales manager. We think that the evidence conclusively shows that Bledsoe alone and not the appellant was bound by said "order." Bledsoe's statement, assuming that he made it, that he sent the money he received from the sale of the stallion to the appellant, for whom, as we have seen, he was in no wise acting, would amount to nothing more than a self-serving statement of Bledsoe and certainly not binding upon the appellant any more than it would be binding upon any other third person that he might have named. The so-called "order" shows clearly that the deal as to the stallion was certainly, at all events, the personal deal of Bledsoe and the appellee.

The appellant complains about the admission into evidence of the so-called "order." It was admissible as

to Bledsoe and could have been limited as to him upon proper request. We see no error in the ruling complained of.

In view of the conclusions we have reached, we do not deem it necessary to discuss alleged errors as to the instructions of which complaint is made. They are not likely to occur again if the case is retried.

The verdict of the jury is not sustained by sufficient evidence and is contrary to law. Judgment reversed with instructions to sustain the motion for a new trial.

Bedwell, J., not participating.

NOTE.—Reported in 37 N. E. (2d) 9.