MILLEDGE, STANLEY, Associate Judge.
The original defendant appeals from a judgment of the Civil Court of Record of Dade County, based on a jury verdict of ’$1,440 compensatory and $1,000 punitive ■damages, for the conversion of an automobile. The defendant, by self help, took possession of a car which the plaintiff contended he bought from the defendant, by means which induced the jury to award punitive damages, an aspect of the case which does not concern us. The point insisted on by the defendant is that the instrument relied on by plaintiff as a bill of sale was in reality nothing but an order which, by its terms, was not to become a contract until authorized by an officer of defendant company. The trial judge did not construe the instrument as a matter of law but submitted the form of the instrument as a fact to be considered by the jury along with all the other facts as bearing on the question to be decided whether the plaintiff was justified in relying on appearances in treating the salesman who signed the instrument on behalf of the defendant as having apparent authority to do so.
The defendant seems to concede, implicitly at least, that the circumstances created apparent authority in Rogers, the used car salesman, except for the express language of the instrument itself. The language of the printed form relied on is: “This order is not binding unless authorized by an officer of the company and purchaser’s credit has been approved by finance company.” The word “order” appears in a number of other places on the paper. The defendant says that since the instrument was never authorized by an officer of the defendant, there never was a contract; only an offer to buy which was never accepted. If there was never a contract, then no title of any kind, equitable or legal, ever passed to the plaintiff in the Ford car in question, and the defendant could not be guilty of conversion when he obtained possession of his own vehicle.
Appellant cites a number of cases from other jurisdictions, encyclopedias and texts to the effect that an order taken by a salesman will not immediately create a contract if confirmation by the salesman’s principal is expressly or impliedly made a term or *641 condition of the agreement. For the purpose of this case, we can assume that the foregoing generality is applicable in Florida. The statement of.a general proposition will not, of itself, solve a particular problem. In the cases cited by appellant in support of the generality, the instrument contained words like the first part of the sentence in the instant paper, but did not contain the second part. Had the instrument here read, “This order is not binding unless authorized by an officer of the company,” and stopped there, appellant’s cases would be in point. In the face of such language (if the purported buyer is made aware of them) these cases hold that the buyer is in no position to assert that the circumstances justified him in presuming that the agent has the requisite authority. In short, an agent’s authority which might otherwise be apparent is made unapparent by the words of the instrument and the words are effective for this purpose if the one dealing with the agent can fairly be charged with knowledge of the existence and usual meaning of the words. This is expressly the way the court dealt with the problem in Oliver Farm Equipment Sales Co. v. Walters, 109 Ind.App. 551, 37 N.E.2d 9, 11, a case cited by the appellant. The court there reasoned:
“The real question before us is, do the facts in the instant case warrant a conclusion that such apparent or ostensible agency existed and could properly be relied upon by the appellee at the time of the so called ‘order’?
“We think the so-called ‘order’ or contract between Bledsoe and the ap-pellee completely negatives and nullifies the idea that the appellee thought he was dealing with one (Bledsoe) who had authority to bind the appellant for it contained the specific provision that ‘I agree that this order is subject to acceptance by * * * and this contract shall be of no effect whatever until such acceptance in writing is given.’ ”
But in the case at hand, the provision is quite different. The provision that the instrument is not binding unless authorized by an officer does not stand alone; it is coupled with the other “unless;” unless the purchaser’s credit has been approved by a finance company. Suppose only the second clause in the sentence were present, and suppose a non-credit transaction. Would anyone suggest that the paper is a mere offer to buy, becoming a contract only upon approval of credit (not involved in the transaction) by a finance company having no interest in the transaction ? This situation is really not changed by coupling the approval of credit by a finance company with approval by an officer of the car dealer. Even though credit, of a sort, might be approved by a finance company, a credit transaction may still adversely affect a used car dealer. Where credit is involved, his printed form provides that there is no contract until the subsequent authorization and approval is obtained. And what significance does this conjunctive sentence have if no element of credit is involved ? There are two possible answers. One is that as a matter of law this is not evidence to put a buyer on notice of the limited scope of the agent’s authority as to a non-credit transaction, since the words have no meaning when applied to this type of transaction. This is the view the writer of this opinion holds. Disposition of this case, however, does not require the adoption of this view. The other possible answer is that the provision is ambiguous and a jury might appropriately consider it, along with all the other facts and circumstances in deciding whether Peterson was justified (that is, acted reasonably) in presuming that Rogers had authority to sell the defendant’s used Ford. That is the view the trial judge took and the case was so submitted to the jury. In deciding that the judgment should be affirmed, it is unnecessary to decide that the judge could have removed this point from the consideration of the jury.
Huskamp Motor Co., Inc., v. Hebden, Fla.App.1958, 104 So.2d 96, is not directly *642 in point, but it is consistent with the present views and holding. There, the instrument contained words much like those in the instrument here. The buyer’s old car was to be taken in trade. Pending approval by a finance company, and while the dealer still had possession of the new car and the prospective buyer had possession of his old car (to be used in trade) the buyer had a fatal accident. The court held that, as a matter of law, the dealer was not liable for the negligence of the buyer, since the dealer had no control over or title of any kind, legal or equitable, in the old car. That sale was on credit and the significance of the provision about later authorization and approval, was in the absence of credit approval at the time of the accident.
The evidence before the jury, which they were entitled to believe, justified Peterson in assuming that Rogers had authority to sell the Ford car, and should be briefly stated.
On the afternoon of October 29, 1958, plaintiff’s son visited the defendant’s used car lot solely in charge of Rogers. The son inquired the price of a 1956 Ford, and was told it was $895. The son inquired if his father’s 1954 Oldsmobile could be used in trade. Rogers told the son to bring his father and the cash difference. Later that day, the plaintiff, with his son, returned to the lot bringing the Oldsmobile and the title certificate to it. Each of the men tried out the other’s car. Rogers said he would make a deal for $50 cash and the Oldsmobile. Plaintiff accepted. He gave Rogers the $50 and the amount of sales tax and cost of transferring the title to the Oldsmobile. In response to Peterson’s inquiry about title to the Ford, Rogers said he would see to it in the morning and the title and registration would be received in the mail. Rogers gave plaintiff a paper to sign. He called it a bill of sale. Plaintiff signed it and kept one copy. He examined it and was given ample opportunity to examine it fully. The Oldsmobile, its keys and title papers were left with Rogers. Rogers gave Peterson the keys to the Ford and said, “You can take it.” The plaintiff and his son drove off in it.
Whatever may have been the express grant of authority from the defendant to Rogers, the jury was warranted on the evidence to find that Rogers had apparent authority. Whether under all the circumstances, including the nature of this kind of busines transaction, Peterson was justified in presuming that Rogers had authority to sell defendant’s Ford car, is a question of fact. T. G. Bush Grocery Co. v. Conely, 61 Fla. 131, 55 So. 867, 869. The jury was allowed to consider as one of the relevant circumstances in considering Peterson’s reliance, the form of the paper which the defendant set such store by. The jury applied the rule in the Conely case:
“Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent’s authority.”
The jury had ample evidence upon which to find their verdict.
The judgment appealed from is affirmed.
HORTON, C. J., and PEARSON, J., concur.