408 So.2d 1071 (1982)
MEEKINS-BAMMAN PRESTRESS, INC., a Florida Corporation, Appellant,
v.
BETTER CONSTRUCTION, INC., a Florida Corporation, Appellee.
No. 81-525.
District Court of Appeal of Florida, Third District.
January 12, 1982.
Rehearing Denied January 29, 1982.
*1072 Bamman & Bowman and Daniel S. Mandell, Pompano Beach, for appellant.
Williams, Salomon, Kanner, Damian, Weissler & Brooks and Gary S. Brooks, Miami, for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
Meekins-Bamman Prestress, Inc. (Meekins) appeals from an adverse judgment rendered after a non-jury trial because of its refusal to perform a purported agreement to supply Better Construction, Inc. with the concrete roof structure for a school building upon which Better had successfully bid. Upon the conclusion that no enforceable contract between Meekins and Better ever came into being, we reverse the judgment below.
The instrument sued upon is a printed Meekins form, filled in with typewriting to reflect the details of the particular job. Omitting the portions which are irrelevant to the decisive issue, which is the very existence of a valid agreement, the document, directed  as in a business letter  to "Better Construction", states, "Thank you for your acceptance of [typed] our proposal [printed]" of $56,000 for the concrete forms. Other printed provisions expressly state:
The above quotation is subject to acceptance by the addressee, and approval by an officer of Meekins-Bamman Prestress, Inc. within thirty (30) days of the above date.
* * * * * *
Note that this proposal is a quotation and does not become a Contract until accepted by the Purchaser (or an officer of the accepting corporation) and approved as a Contract by Meekins-Bamman Prestress, Inc... .
The bottom of the document, after the signature lines, contains the printed request:
PLEASE SIGN AND RETURN ALL COPIES IMMEDIATELY.
We will forward one (1) approved copy to you.
The document was prepared by a Meekins sales representative named Richard Chatellier, who was not an officer of the corporation. The Meekins half of the signature portion appears as follows:
 RICHARD CHATELLIER [typed]
 MEEKINS-BAMMAN PRESTRESS, INC.
By: /s/ Richard Chatellier 
 Approved: Meekins-Bamman Prestress, Inc.
By _____________________________________________
 _______________, 197_
Title __________________________________________
In that form, the proposal was transmitted to Better which "accepted" it through its vice-president, Ortega. Although, as the foot of the agreement directed, copies of the document were then returned to Meekins, the defendant never filled in the "Approved, Meekins ... By" blanks nor otherwise expressed its "approval" of the agreement as required by its specific terms.[1] Because *1073 of Meekins' failure to deliver the materials for the specified price, Better successfully sued for the $7,400 difference between that figure and the next lowest bid for the same work. This result cannot stand.
It is universally held that a document such as the one involved in this case, which specifically conditions the contractual effectiveness of a proposal by a projected seller upon its own subsequent approval, constitutes no more than a solicitation to the prospective purchaser to make an offer itself. As is said in 1 A. Corbin, Contracts § 88 (1963):
When one party solicits and receives an order or other expression of agreement from another, clearly specifying that there is to be no contract until ratification or assent by some officer or representative of the solicitor, the solicitation is not itself an offer; it is a request for an offer. The order that is given upon such a request is an offer, not an acceptance. The soliciting party is not specifying a mode of acceptance when he specifies assent or ratification `at the home office' as a prerequisite. The party complying with the request, by giving the order or otherwise, is making an offer....
Since the offer thus deemed to have been made by Better was not accepted  or, in the words of the instrument, "approved"  by the offeree Meekins, it follows that no binding agreement was ever formed. This conclusion is mandated by general principles of offer and acceptance, 11 Fla.Jur.2d Contracts § 24 (1979), as they have been particularly applied to equivalent legal situations. Oliver Farm Equipment Sales Co. v. Walters, 109 Ind. App. 551, 37 N.E.2d 9 (1941); McWhorter v. Employers Mutual Casualty Co., 28 Wis.2d 275, 137 N.W.2d 49 (1965); 77 C.J.S. Sales § 28b (1952); see also, Goodwin v. Jacksonville Gas Corp., 302 F.2d 355, 362 (5th Cir.1962); 11 Fla.Jur.2d Contracts § 139 (1979); compare, Knickerbocker Fine Cars, Inc. v. Peterson, 118 So.2d 639 (Fla. 3d DCA 1960).
The appellee argues, however, that it was entitled to rely upon Chatellier's "apparent authority" to enter into a contract on Meekins' behalf. This contention cannot be sustained. In the first place, the record is devoid of any evidence that, as required to uphold such a claim, Meekins itself took any affirmative action to mislead Ortega into the belief that Chatellier, a non-officer, possessed the ability to bind his principal. See Taco Bell of California v. Zappone, 324 So.2d 121 (Fla. 2d DCA 1975), and cases cited. Second, and more significant, the apparent authority claim is belied and negated on the face of the instrument itself, which  although presented to Better with Chatellier's signature already upon it  nevertheless stated that it did not become a contract unless it was, obviously thereafter, approved by an officer of Meekins. Under these circumstances, Better cannot be heard to say that Chatellier's signature was enough.
[W]here an order for goods taken by a salesman stipulates, or is understood to require, that it is to be approved by the seller principal, or that it is subject to approval by the home office, the order does not become a contract of sale until it is so approved, unless such condition is waived by the seller; and, where the order signed by the buyer shows on its face that it is subject to approval of the seller principal, the buyer is bound to know that it is not binding until it is so approved. [e.s.]
77 C.J.S. § 28b, supra, at nn. 78-81. Accord, e.g., Oliver Farm Equipment Sales Co. v. Walters, supra; B.A. Eckhart Milling Co. v. Illinois Doughnut & Cake Co., 314 Ill. App. 196, 40 N.E.2d 826 (1942); Waxelbaum v. Schloss, 131 App.Div. 826, 116 N.Y.S. 42 (1909); McWhorter v. Employers Mutual Casualty Co., supra. In Knickerbocker Fine Cars, supra, this court, in dealing with an agreement it deemed decisively different from the present one, stated the law which is directly applicable here.

*1074 Appellant cites a number of cases from other jurisdictions, encyclopedias and texts to the effect that an order taken by a salesman will not immediately create a contract if confirmation by the salesman's principal is expressly or impliedly made a term or condition of the agreement. For the purpose of this case, we can assume that the foregoing generality is applicable in Florida. The statement of a general proposition will not, of itself, solve a particular problem. In the cases cited by appellant in support of the generality, the instrument contained words like the first part of the sentence in the instant paper, but did not contain the second part. Had the instrument here read,[[2]] `This order is not binding unless authorized by an officer of the company,' and stopped there, appellant's cases would be in point. In the face of such language (if the purported buyer is made aware of them) these cases hold that the buyer is in no position to assert that the circumstances justified him in presuming that the agent has the requisite authority. In short, an agent's authority which might otherwise be apparent is made unapparent by the words of the instrument and the words are effective for this purpose if the one dealing with the agent can fairly be charged with knowledge of the existence and usual meaning of the words. This is expressly the way the court dealt with the problem in Oliver Farm Equipment Sales Co. v. Walters, 109 Ind. App. 551, 37 N.E.2d 9, 11, a case cited by the appellant. The court there reasoned:
`The real question before us is, do the facts in the instant case warrant a conclusion that such apparent or ostensible agency existed and could properly be relied upon by the appellee at the time of the so called "order"?
`We think the so-called "order" or contract between Bledsoe and the appellee completely negatives and nullifies the idea that the appellee thought he was dealing with one (Bledsoe) who had authority to bind the appellant for it contained the specific provision that I agree that this order is subject to acceptance by * * * and this contract shall be of no effect whatever until such acceptance in writing is given.'
118 So.2d at 640-41.
Better also claims that the location of the words "Approved: Meekins. Bamman Prestress, Inc." directly, rather than two or three spaces under the line on which Chatellier signed implies that it was he who had given that approval. Again, this view would render much of the language of the proposal (as well as the "By ____," and "Title ____" spaces which follow "Approved: Meekins...") entirely meaningless. Such an interpretation is unacceptable. See Jacobs v. Parodi, 50 Fla. 541, 39 So. 833 (1905). Considering the document as a whole, see, Jackson v. Parker, 153 Fla. 622, 15 So.2d 451 (1943), it is obvious that Chatellier's name and signature appear only in his capacity as the employee making the proposal and that the document had later to be "Approved ... By ..." a Meekins officer who never did so. We cannot hold that the entire legal meaning of the instrument is completely altered by the simple and plainly inconsequential nonexistence of three millimeters of empty space.
The judgment under review is reversed and the cause remanded with directions to dismiss the complaint with prejudice.
Reversed.
NOTES
[1] This was because a miscalculation had caused an underestimate of the amount of concrete required and therefore the cost of the job. Our disposition of the case makes it unnecessary to consider Meekins' alternative contention that the unilateral mistake entitled it to rescind any resulting obligation. Compare State Board of Control v. Clutter Construction Corp., 139 So.2d 153 (Fla. 1st DCA 1962), cert. denied, 146 So.2d 374 (Fla. 1962) and Florida Cranes, Inc. v. Florida East Coast Properties, Inc., 324 So.2d 721 (Fla. 3d DCA 1976) with Graham v. Clyde, 61 So.2d 656 (Fla. 1952) and Lassiter Construction Co. v. School Board for Palm Beach County, 395 So.2d 567 (Fla. 4th DCA 1981).
[2] As does the one involved in this case.