PARKER, Judge.
Sun Bank of Tampa Bay (Sun Bank) appeals and alleges that the trial court erred in surcharging Sun Bank as the personal representative of an estate for the return of a real estate commission and in taxing costs and attorney’s fees, all in favor of the estate of Roy Lee Bryan, deceased, and its beneficiaries. We affirm all aspects of the trial court’s orders.
Appellee, Grace F. Bryan (Mrs. Bryan), is the surviving spouse of decedent and the principal beneficiary of his estate. The assets of the estate included, among other assets, a 765-acre tract of timberland located in Union County, Florida, and a single-family residence located in St. Petersburg, Pinellas County, Florida. Decedent’s will contained the following relevant provisions: the assets of the estate were to be held in trust; income was payable to Mrs. Bryan; the entire corpus and accumulated income of the trust would be distributed to decedent’s sister upon the death of Mrs. Bryan; the personal representative was not given the power to sell real property; the sale of the Union County property was expressly prohibited; and Sun Bank was nominated as personal representative.
Sun Bank held itself out to the public as having special skills in the administration of estates and assigned day-to-day responsibility of the Bryan estate to Carolyn Wiggins, a corporate officer of Sun Bank. Experienced probate counsel represented Mrs. Bryan at all times during the administration of the estate, and he regularly communicated with Sun Bank.
Mrs. Bryan filed an election to take an elective share and entered into an agreement with the decedent’s sister which fixed and determined their respective distributive shares of the estate. This agreement contemplated that the Union County property would be sold.
In September or early October 1985 a discussion between the decedent’s sister and Mrs. Bryan took place in Mrs. Bryan’s home in the presence of Doris Rogers, decedent’s niece. The sister observed that the niece was in the real estate business and stated that her niece “should get in on it” if the properties in the estate had to be listed with a broker. Mrs. Bryan responded by stating that she personally had no objection to the niece’s involvement if the properties had to be listed, but further stated that she did not want to be involved in the matter. Mrs. Bryan instructed that anything in this regard had to be done through the attorney representing her in connection with the estate. Mrs. Bryan then withdrew from the discussion and left.
The beneficiaries, acting through Mrs. Bryan’s attorney in a letter to Sun Bank dated October 17, 1985, requested that Sun Bank consider the niece as the listing realtor. The pertinent parts of the letter stated:
Mrs. Bryan called the local appraiser, who went through the house on October 11, 1985. You will probably be receiving the appraisal in short order. If not, please confer with the appraisers. I am much more concerned about the Union County property. Please call me to advise the progress on obtaining this appraisal. After you have any of the appraisals, I would appreciate three copies, one for me and one each for Mrs. Bryan and Mrs. Alfonso [decedent’s sister], who is still with Mrs. Bryan. There is a niece connected with Valliant [sic] Realty, who would like to be considered for the listing. This should be considered and discussed, as I would want the bank to be satisfied with the lister and that the best marketing effort will be made.
Sun Bank relies on this letter to prove that the attorney requested the niece to be the listing realtor for the Union County property. Mrs. Bryan, at an adversary proceeding on her petition to surcharge, presented testimony of the attorney who wrote the letter. The attorney explained that by the letter he only meant that the niece should be considered for the listing agent for the St. Petersburg property and not the Union County property. In fact, the attorney took the position that Sun Bank should keep “hands off” with regard to the marketing of the Union County property.
*292 On November 14, 1985, Sun Bank listed the St. Petersburg residence for sale with the niece under an exclusive listing agreement. Sun Bank required and did receive written consents to the St. Petersburg listing from Mrs. Bryan and the decedent’s sister. Thereafter, on December 9, 1985, the niece procured a buyer for the St. Pe-tersburg residence.
On December 16, 1985, the niece went to Sun Bank’s offices and requested that she be given an exclusive listing to sell the Union County property. Sun Bank, through Wiggins, and the niece signed a multiple listing service “Listing Agreement Exclusive Right of Sell” form having a duration of one year and providing for a sales price of $1,250,000, and a fee or commission of ten percent. Wiggins told the niece to hold the listing agreement in her file and to do nothing until Wiggins further instructed her. The niece advised Wiggins that a copy of the listing agreement would be furnished to Wiggins after it was accepted by the niece’s broker. Wiggins did not retain a copy of the listing agreement for her file.
At the hearing on the petition to surcharge, the niece testified that it was her intent that the listing agreement be effective immediately and that Wiggins did not tell her otherwise. Wiggins confirmed that she did not tell the niece that the agreement was not to be immediately effective. Wiggins further testified that it was her intent that the contract was effective immediately, that the contracting realtor was to be the broker for the property, and that Mrs. Bryan would be bound by the agreement. However, deposition testimony taken in a different case reflects Wiggins testified that she considered the listing agreement to be ineffective and not in force. Her testimony was as follows:
Q. Isn’t it true that during the time frame that you’re referring to the memo, that you considered the listing agreement not to be effective and in force?
A. Yes.
Q. What was the basis of your belief that the listing agreement was not in force, in effect?
A. I asked her to hold it until I let her know.
On or about January 7, 1986, a prospective purchaser contacted Mrs. Bryan about the Union County property. She referred him to her attorney who, in turn, immediately advised Sun Bank. Sun Bank failed to inform the attorney about the listing agreement because Wiggins had forgotten about the agreement. The attorney for Mrs. Bryan handled the real estate transaction involving the sale of the Union County property. On January 15, 1986, Sun Bank, as personal representative, the seller, and the prospective purchaser entered into an option purchase agreement for the Union County property which had been prepared by Mrs. Bryan’s attorney. Just prior to the execution of that agreement, the attorney specifically inquired of Wiggins whether there was any listing with a broker on the property. Wiggins advised the attorney that no broker was involved. The option to purchase was exercised before February 7, 1986.
By the end of January 1986, the niece had learned of the pending sale of the Union County property. As of that time, the niece had not communicated to Sun Bank the broker’s acceptance of the exclusive listing agreement on the Union County property. In fact, the niece had no contact or communication with Sun Bank regarding the Union County property from the day the listing agreement was signed until March 3,1986, the day of closing on the St. Petersburg residence. At the closing, the niece, for the first time, furnished Sun Bank and Mrs. Bryan’s attorney with copies of the exclusive listing agreement form which, by that time, had been accepted by the niece’s broker. Further, the niece and her real estate office did not place the listing of the Union County property into the multiple listing service (MLS) until February 20, 1986.
On February 26, 1986, without disclosing the listing agreement or the fee or commission which would be payable thereunder, Sun Bank presented a petition tó the probate court for authorization to sell the Union County property and obtained entry of *293 an order authorizing the sale under the option purchase agreement. The purchase agreement on the Union County property closed on March 10, 1986, and the property was sold for $850,000. The niece’s real estate firm demanded payment of the full commission in the amount of $85,000. Mrs. Bryan, through her attorney, advised Sun Bank that the real estate firm was not entitled to a commission and objected to its payment. Sun Bank advised the real estate firm that its position was that the listing agreement was invalid because it had been obtained through misrepresentation and was never unconditionally delivered. On June 18, 1986, the broker sued Sun Bank for breach of contract. On September 17, 1986, Sun Bank, over the objection of Mrs. Bryan, settled the action and, without order or approval of the court, paid $85,000 of the assets of the estate to the broker, obtaining a release from the broker which released Sun Bank both individually and as personal representative.
The trial judge in this case entered an order dated August 18, 1987, finding that the written exclusive listing agreement concerning the Union County property was not a complete contract; that the delivery of the agreement was expressly conditioned upon the agreement that it would be held in the realtor’s file with nothing being done regarding it until further approval from the personal representative; that pri- or to further approval from the personal representative, Mrs. Bryan procured a purchaser for the Union County property and it was sold; that there was no obligation for the estate to pay a fee or commission to the realtor; and that the payment of the fee or commission was an improper disbursement and exercise of the personal representative’s powers. The court ordered Sim Bank to return $85,000 to the estate with interest thereon, together with taxable costs including attorney’s fees.
We affirm the trial court's finding that the exclusive listing agreement was not a complete contract. The law is clear that “[i]n order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense.” Strong & Throwbridge Co. v. H. Baars & Co., 60 Fla. 258, 257, 54 So. 92, 93 (1920). We also agree with the trial court’s finding that the delivery of the agreement was conditional; therefore the contract was not complete. A written document, complete on its face and delivered to one of the signatories, does not become an enforceable contract if it was delivered subject to a condition or with a reservation until that condition is satisfied. Cockrell v. Taylor, 122 Fla. 798, 165 So. 887 (1936); Coleman v. Brooks, 113 So.2d 590 (Fla. 2d DCA 1959).
The trial court’s decision is supported by the following competent evidence:
1. Sun Bank testified through its authorized representative, in another proceeding, that the listing agreement was not effective, since Sun Bank had ordered a “hold” on the agreement until Sun Bank “let her [the niece] know”;
2. Sun Bank failed to retain a copy of the listing agreement in the estate file;
3. Sun Bank failed to document its records as to the meeting between the niece and Sun Bank’s representative;
4. Sun Bank failed to follow up to obtain a copy of the listing agreement signed by the broker;
5. When the purchase option agreement on the Union County property was being executed, Sun Bank’s representative advised that there was no listing agreement on the property; and
6. Upon the real estate firm demanding payment of the full commission, Sun Bank responded that the listing agreement was invalid because it had been obtained through misrepresentation and was never unconditionally delivered.
Similarly, the niece’s actions indicate her acquiescence in the condition of delivery and understanding that the contract was not complete. All of the niece’s actions to enforce this listing agreement took place after she was aware that there was a pending sale of the property:
*294 1. The niece and her real estate office did not list the property in MLS until more than one month after there was a pending sale on the property and at least three weeks after the niece was aware of the pending sale; and
2. One month after the option to purchase had been exercised, the niece provided Sun Bank, for the first time, with copies of the listing agreement bearing a broker’s signature, signifying acceptance of the listing.
Based upon the above-listed actions by both the niece and Sun Bank, it was reasonable for the trial court to infer that they understood and agreed that the listing agreement was not complete and only conditionally delivered until Wiggins instructed the niece to the contrary.
Affirmed.
RYDER, A.C.J., and FRANK, J., concur.