856 So.2d 1125 (2003)
SOUTHERN INTERNET SYSTEMS, INC., by and through Deborah MENOTTE, as Chapter 7 Trustee, as Proper Party in Interest Pursuant to 11 U.S.C. § 541, and not individually, Appellant,
v.
James S. PRITULA, Appellee.
No. 4D02-1959.
District Court of Appeal of Florida, Fourth District.
October 22, 2003.
Morris G. (Skip) Miller of Adorno & Yoss, P.A., West Palm Beach, for appellant.
*1126 James S. Pritula, Palm Beach Gardens, Pro Se.
TAYLOR, J.
Southern Internet Systems, Inc. appeals from an amended final judgment awarding appellee, James S. Pritula, liquidated damages for Southern Internet's failure to comply with a settlement agreement entered into between the parties. We reverse, because the settlement agreement was never approved by the board of directors of Southern Internet and the board of directors of Cabletron, as required by the agreement.
Southern Internet hired appellee as its financial advisor for a five-year term. About a year later, Southern Internet hired appellee as its President and CEO pursuant to a written agreement. Subsequently, Southern Internet gave notice to appellee of its intention to terminate his employment and financial advisory position.
Appellee filed suit against Southern Internet. His complaint included claims for breach of contract, breach of employment agreement, action on promissory note, and breach of stock option agreement. Southern Internet filed an answer and affirmative defenses, alleging, among other things, failure of consideration, breach of fiduciary duty, and fraud. Southern Internet also filed an eighteen-count counterclaim.
The parties agreed to mediation and negotiated a settlement agreement on March 30, 2000. Kevin Calderbank, the current president and CEO of Southern Internet, attended the mediation on the company's behalf and signed the settlement agreement. Under the settlement agreement, appellee was required to cancel all notes to him from Southern Internet and to deliver all his Southern Internet stock (approximately 3,800,000 shares). In turn, Southern Internet agreed to pay appellee $500,000 on May 1, 2000 and to give appellee a $250,000 promissory note maturing May 1, 2001 and a $1,250,000 three-year subordinated convertible note.
Section 6 of the Settlement Agreement further provided:

Conditions Precedent. The terms and conditions of this Agreement will be subject to the final approval of a majority of the board of directors of the Company and Cabletron.
Cabletron, or Cabletron Systems, Inc., is a company with which Southern Internet had two stock purchase agreements. Pursuant to those agreements, Southern Internet was required to obtain approval from Cabletron before purchasing, redeeming, or acquiring its stock, including repurchasing common stock from its founders.
The Settlement Agreement also contained a default provision, Section 10, which stated:
In the event of a default in the payment of the initial Five Hundred Thousand Dollar ($500,000.00) payment required herein, Pritula shall be entitled to enter final judgment against the Company in the amount of One Million Dollars ($1,000,000.00). A Stipulation for Judgment shall be prepared, executed and held in escrow....
In the event of a default in the payment of the initial Two Hundred Fifty Thousand Dollar ($250,000.00) payment required by Section "3b" herein, Pritula shall be entitled to enter final judgment against the Company in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00). A Stipulation of Judgment shall be prepared, executed and held in escrow.
Appellee filed a Motion for Judgment based upon Southern Internet's failure to *1127 pay the first installment of $500,000 on May 1, 2000. Before the hearing on the motion, the parties filed memoranda of law in support of their respective positions and depositions of both appellee and Calderbank. Additionally, Southern Internet filed the affidavits of the three members of its Board of Directors: John Palace, Ed Ruth, and Graham Morrison. Each affidavit stated that Calderbank presented the settlement agreement to each of them shortly after it was executed. Each stated that Southern Internet could not approve the Agreement unless it had the financial means to perform. Furthermore, each director stated:
Had I been asked to vote to approve, or consent to, the Agreement at any time prior to May 1, 2000 (the proposed date of closing), or thereafter, I would not have done so, primarily because Southern Internet did not have the financial means necessary to fund the initial payment under the Agreement. Consequently, I never gave my approval or consent for the Agreement.
Graham Morrison was not only on the board of directors of Southern Internet, but was also Cabletron's director of business development. He stated in his affidavit that Cabletron would not have considered approval of the agreement unless and until such time as Southern Internet had the financial ability to fund the agreement. Furthermore, in Calderbank's deposition, he stated that he presented the settlement agreement at separate times to each director individually. However, he did not call a board meeting, as he thought it would be futile due to the lack of financing.
After a hearing on the matter, the trial court entered an order granting appellee's Motion for Judgment. Essentially, the court determined that Southern Internet had the exclusive control and responsibility to perform the condition precedent to the settlement agreement, i.e., obtain board approval, but in bad faith elected not to do so. In its Amended Final Judgment, the trial court found that "[a]ccording to [Southern Internet's] testimony and affidavits, neither Cabletron nor the Board of Directors of Southern Internet were ever asked to approve the settlement agreement." The court further reasoned that there was nothing in section 6 that made the settlement agreement conditional upon Southern Internet's financial position, and that financing was in place at the time Calderbank signed the agreement. Accordingly, the court ordered Southern Internet to pay the sum of $3,110,833.33 to appellee.
In Insurance Concepts and Design, Inc. v. Healthplan Services, Inc., 785 So.2d 1232, 1234-35 (Fla. 4th DCA 2001), we discussed the concept of implied covenants of good faith and fair dealing, stating:
Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. This covenant is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." However, there are two restrictions on causes of action for the breach of good faith and fair dealing. First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties. Second, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached.
We concluded that allowing such a claim "`where no enforceable executory contractual obligation' remains would add an obligation to the contract that was not negotiated by the parties." Id. at 1235 (citing *1128 Hospital Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. 4th DCA 1998)).
Appellee argued that Southern Internet breached the implied covenant of good faith and fair dealing by not making a good faith effort to gain approval of the settlement agreement by the board of directors and the Cabletron board. For appellee's argument to succeed, appellee must have attached the implied covenant to an express term of the contract. Furthermore, appellee's assertion presupposes that the settlement agreement was already a binding and enforceable contract. We conclude that it was not.
In Carson v. Fishtail Marine of Naples, Inc., 697 So.2d 1222 (Fla. 2d DCA 1997), the parties entered into a contract for the sale of a boat. One of the conditions of the sale was U.S. Coast Guard inspection and approval of the boat for commercial use. Neither party disputed that the Coast Guard's approval was not obtained. The court concluded that there was no enforceable contract because all of the conditions were not satisfied:
The established case law in Florida is that "[a] written document, complete on its face and delivered to one of the signatories, does not become an enforceable contract if it was delivered subject to a condition or with a reservation until that condition is satisfied."
Id. at 1223 (citing Sun Bank of Tampa Bay v. Bryan, 527 So.2d 290 (Fla. 2d DCA 1988)); see Meekins-Bamman Prestress, Inc. v. Better Constr., Inc., 408 So.2d 1071 (Fla. 3d DCA 1982)(holding that a document which specifically conditions the contractual effectiveness of a proposal by a projected seller upon its own subsequent approval, constitutes no more than a solicitation to the prospective purchaser to make an offer itself); see also Sousa v. Palumbo, 426 So.2d 1072 (Fla. 4th DCA 1983) disapproved on other grounds by Gibson v. Courtois, 539 So.2d 459 (Fla.1989)(holding that a contract was unenforceable because it was executed by only three stockholders and contract was conditioned upon execution by all six stockholders before it became enforceable).
Settlement agreements, like contracts for purchase and sale, are determined and governed by contract law. See Cheverie v. Geisser, 783 So.2d 1115, 1118 (Fla. 4th DCA 2001). Here, the settlement agreement was conditioned upon approval of the board of directors of Southern Internet and the board of directors of Cabletron. Neither board ever approved of the settlement agreement's terms. Therefore, the condition precedent to the formation of a contract was never met. Hence, no contract was ever fully formed.
According to appellee, Southern Internet waived the condition precedent contained in Section 6 of the settlement agreement by failing to seek approval of the contract from either board. Apparently agreeing with this position, the trial court ruled that Calderbank breached the covenant of good faith and fair dealing when he "failed to call a board meeting at which the members [of the board] could have accepted or rejected the Agreement." In so holding, the court cited Ward v. Branch, 429 So.2d 71 (Fla. 4th DCA 1983).
In Ward we explained that:
It is a well-established principle of law that one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be *1129 relieved of his responsibility to perform under the contract.
Id. at 74.
The trial court's ruling that Calderbank's failure to call a board meeting prevented the condition precedent from occurring overlooks the undisputed evidence that neither the Southern Internet nor the Cabletron board of directors would have approved the settlement agreement had it been formally presented to them. Every member of Southern Internet's board provided an affidavit which stated that Calderbank presented him with the settlement agreement, that each director determined that Southern Internet did not have the financing to comply with the settlement terms, and that each would have voted against approval had an official meeting been called. Morrison's affidavit further stated that the board of Cabletron would not have approved of the agreement. Furthermore, just as there is nothing in Section 6 which states that the agreement was conditioned upon Southern Internet's financial position, there is also nothing in the agreement which required Calderbank to officially call a meeting of the board of directors to vote on whether to approve of the agreement's terms. Based upon the responses that Calderbank received from speaking with the board of directors, it appears that calling a formal meeting would have been futile.
Without a valid and enforceable settlement agreement, and consequently no express term or provision upon which appellee could properly attach the implied covenant of good faith and fair dealing, the trial court erred in entering judgment against Southern Internet. We therefore reverse the trial court's order. Because we hold that no valid and enforceable contract existed between the parties, we need not decide Southern Internet's remaining points on appeal.
REVERSED.
SHAHOOD and MAY, JJ., concur.